FILED
2005 Jan-05  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **CAROLYN J. AMOS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  CV 02-P-0609-S** |
| | ) | |
| **TYSON FOODS, INC., a corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment (Doc. #31) filed July 31, 2003.  The undersigned received this case by reassignment (Doc. #43) on October 1, 2003.  The court set this case for and heard oral argument from the parties at its October 28, 2003 motion docket.  For the reasons outlined below, there are no disputed issues of material fact and Defendant has demonstrated it is entitled to judgment as a matter of law.  Defendant's Motion for Summary Judgment is due to be granted.

## I.    Procedural History

Plaintiffs Carolyn J. Amos ("Amos") and Peggy A. Saunders ("Saunders") commenced this action on January 3, 2002.  (Doc. #1).  In their complaint, Amos and Saunders allege that Defendant Tyson Foods, Inc. ("Tyson") discriminated against them under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 (the "ADEA"), and the Alabama Age Discrimination in Employment Act (the "AADEA").  Plaintiffs amended their complaint on October 29, 2002, and added Plaintiff Brenda Gilbert ("Gilbert") to the litigation.  (Doc. #20).

On July 31, 2003, Tyson filed a Motion for Summary Judgment (Doc. #31) with respect to all pending claims.  On that same date, Tyson filed an evidentiary submission (Doc. #32), discovery

submission (Doc. #33), and a statement of facts (Doc. #34).  After obtaining two extensions of time, Plaintiffs filed a statement of facts (Doc. #40), a responsive submission (Doc. #41), and an evidentiary submission (Doc. #42) in opposition to summary judgment.  Tyson filed its reply (Doc. #44) on October 6, 2003.

The court set this case for its October 28, 2003 motion docket.  The parties presented oral argument at the motion docket, and the court took consideration of Tyson's Motion for Summary Judgment under submission.  On April 6, 2004, Tyson sought to supplement its summary judgment, and that motion was granted on April 7, 2004.  (Doc. #48).  The court allowed Plaintiffs fifteen (15) days to respond to Tyson's supplementation in the event they believed such a response was warranted.

## II.    Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas*

2

*Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54.

## III.  Relevant Undisputed Facts[1]

### A.  Plaintiff Gilbert's Claims[2]

Plaintiff Gilbert began working at the Tyson processing plant in Blountsville, Alabama in March 1996. (Doc. #36 Admitted Fact (hereinafter "AF") Nos. 1, 11). In September 1998, Gilbert filed a lawsuit against Tyson alleging that she was subjected to sexual harassment and retaliation in violation of Title VII. (AF No. 12). Gilbert's lawsuit was consolidated with another action, and on July 16,

---

[1]The court has generated the following statement of facts by reviewing Tyson's proposed statement of facts (*see* Doc. #34) contained in court document #36 and comparing it to Plaintiffs' response. (*See* Doc. #40). If facts are in dispute, they are stated in the manner most favorable to Plaintiffs. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[2]To avoid excessive repetition of facts, the court has limited this section to those facts the court finds pertinent to Plaintiff Gilbert's primary claims.

1999, Gilbert executed a Release and Individual Settlement Agreement that released all claims that she had against Tyson that arose prior to the date that she signed the document.  (AF Nos. 13-14).

Gilbert claims that she and fellow co-worker, Chirell Silmon Jones ("Jones), became involved in a relationship beginning in 1998, that the two of them lived together, and that the relationship came to an end when Jones told her that she had decided to get back together with her husband.  (AF Nos. 15, 16, 22).  After receiving this news from Jones, Gilbert testified that she spoke with her supervisor, Tommie Harris ("Harris"), and said, "I told her [i.e. Harris] I just want my stuff back.  I was going to get a lawyer.  I want my stuff back, and if she don't give it back, I was going to kill her."  (Gilbert Depo. at 106).  On April 1, 2002, Harris filed a written report documenting Gilbert's threat to kill Jones. (Gilbert Depo. at Ex. 6).

Tyson's Workplace Violence Policy prohibits a team member from engaging in violence or threats of violence against co-workers.  (AF No. 56).  Pursuant to the Workplace Violence Policy, Tyson conducted an investigation into the reported death threat, which included an interview with Gilbert. (AF Nos. 68, 69).  During this interview, Gilbert confirmed that she had made the threat "[t]hat I would kill her [Jones]."  (Gilbert Depo. at 142).  Gilbert's handwritten version of the events provides in pertinent part: "But anyways, yes I said I'd kill her.  But I didn't mean it as being Dead.  I meant by fighting her."  (Gilbert Depo. at 123-24; *id.* at Ex. 10).

As part of its investigation, Tyson also interviewed Jones, who indicated that she was scared of both Gilbert and Gilbert's brother and that she was concerned that Gilbert might be capable of following through on the death threat.  (Jones Depo. at 57, 76).  Upon completion of the investigation, Tyson advised Gilbert that she was being discharged for threatening to kill a co-worker in violation of Tyson's Workplace Violence Policy.  (AF No. 79).

4

### B.    Plaintiffs Amos and Saunders's Claims[3]

Plaintiff Amos was born in 1948 and has worked for Tyson since 1985.  (AF No. 122).  Plaintiff Saunders was also born in 1948 and has worked for Tyson since August 1988.  (AF No. 123).  Plaintiffs have worked the third shift in Tyson's Sanitation Department at its Blountsville facility for more than eight years.  (AF No. 124).

Prior to March 14, 2001, Tyson issued a non-punitive letter of reprimand to Amos in connection with a complaint made about her spraying a fellow co-worker.  (Amos Depo. at Ex. 15).  Amos did not suffer any loss in pay or time worked over the incident.  (AF No. 133).  After a subsequent investigation, Tyson voided the non-punitive letter of reprimand.  (Amos Depo. at 238-39).

On March 14, 2001, a co-worker filed a complaint with Human Resources alleging that  Amos had called him a "bitch" as he passed by her in the break room.  (AF No. 140).  Jan Casey ("Casey") met with Amos and advised her that she would be suspended pending a Human Resources' investigation into the complaint.  (AF No. 141).  Amos denied making the remark and offered names of some co-workers who might be witnesses.  (AF No. 142).  While Amos did miss one day of work due to this reported incident, upon completion of the investigation, Tyson returned her to work and paid her for the one day that she was suspended.  (AF No. 161).

During their March 14, 2001 meeting, Amos told Casey about another incident that Amos indicated had happened approximately one month earlier.  (AF No. 144).  Amos relayed to Casey that she and Saunders had been in the ladies restroom when a Hispanic man opened the door and walked through the bathroom.  (AF #145).  This incident allegedly took place on February 16, 2001.  (AF No.

---

[3]To avoid excessive repetition of facts, the court has limited this section to those facts the court finds pertinent to Plaintiffs Amos and Saunders's primary claims.

146).  Amos was in the process of using the bathroom when the man came into the bathroom.  (Amos Depo. at 138).  Amos did not know the name of the Hispanic man on March 14, 2001, when she reported the incident to Casey.  (AF No. 154).  Amos recalls that prior to making a report to Casey about the bathroom incident that she had told three other supervisors about it.  (AF No. 153; Amos Depo. at 108-09).  At some point between March 14, 2001 and March 20, 2001, Amos identified the Hispanic man as Roberto Maysonet ("Maysonet").  (AF No. 166).

Tyson conducted an investigation into the reported bathroom incident and interviewed several witnesses including Amos, Saunders, and Maysonet.  (AF No. 163 (not disputed by Plaintiffs); Johnson Depo. at 106-07).  Amos recalls that no words were exchanged among Amos, Saunders, and Maysonet while he was in the restroom (AF No. 174), but does recall that Maysonet gawked at Plaintiffs.  (AF No. 180).  Amos admits that while the incident was upsetting to her, she did not miss any time away from work because of it.  (AF No. 182).  Saunders recalls that she was changing clothes (i.e. wearing her t-shirt and  underwear, and pulling up her sweat pants) and that Amos was getting off the toilet when Maysonet walked into the ladies bathroom.  (AF Nos. 191, 194; Saunders Depo. at 112).  Saunders's statement does not identify Maysonet by his name, but rather she referred to him as "a Mexican".  (AF No. 192; Saunders Depo. at Ex. 17).  Saunders estimates that Maysonet was in the women's restroom less than thirty seconds.  (AF No. 197).

Upon completion of its investigation, Tyson issued a serious counseling statement to Maysonet.  (AF No. 155).  By the time that Tyson took this action, Plaintiffs had already filed their EEOC charges.  (AF No. 155).  Neither Amos nor Saunders ever complained to Human Resources about any behavior

by Maysonet other than the bathroom incident.  (AF No. 238).[4]

## IV.    Applicable Substantive Law and Discussion

### A.    Plaintiff Gilbert's Case

#### 1.    Retaliation

Plaintiff Gilbert's primary retaliation claim is that Tyson discharged her in retaliation for previously filing a lawsuit for sexual harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964.[5]  In order to establish a *prima facie* case of retaliation, a plaintiff must show:  (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse treatment was causally connected to her protected activity.  *See, e.g., Weaver v. Casa Gallardo,* 922 F.2d 1515, 1524 (11th Cir. 1991).  Tyson challenges Plaintiff's ability to meet the third element of her *prima facie* case.  Tyson also argues that even assuming that Plaintiff can establish a *prima facie* case of retaliation, she cannot overcome Tyson's legitimate explanation that it fired her for making a reported death threat.

Turning to the causal connection element, it is undisputed that all the alleged retaliatory incidents relied upon by Plaintiff took place nearly four years after Gilbert filed her first lawsuit against Tyson. This evidence alone suggests a lack of any causal relation.  *See Clark County School District v. Breeden,* 532 U.S. 268, 273-74 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all.") (citing affirmatively several court of appeals cases for the proposition that a three to four month

---

[4] The court notes that while Plaintiffs indicate that they dispute this fact in court (Doc. # 40), the referenced deposition transcript cite does not present evidence which disputes the statement.

[5] Plaintiff Gilbert also questions some other employment actions as being either retaliatory, discriminatory, or both.  The court will address these other allegations of Plaintiff Gilbert in more detail below.

gap is not enough); *Higdon v. Jackson*, No. 03-14894, 2004 WL 2903979, at *7 (11th Cir. Dec. 16, 2004) (relying upon *Breeden* opinion and concluding that 3-month period is insufficient); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (recognizing that temporal proximity must be very close); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (finding that 3-month period is insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (determining that 4-month period is insufficient).

Gilbert next argues that summary judgment should be denied because of certain "comparator evidence" she has presented. However, none of the people to whom Gilbert compares herself are similarly situated. *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843-44 (11th Cir. 2000) (upholding decision granting summary judgment on discharge claim when plaintiff admits to insubordination and lacks evidence of other insubordinate employees that more favorably treated). In addition, the argument simply ignores the fact that all three workers at the Blountsville plant who have been accused of violating Tyson's Workplace Violence Policy since the policy's inception in 2002 – Gilbert (white), Juan Vargas (Hispanic), and Frank Brewster (Black) – have been discharged. (Casey Decl. ¶ 18). Thus, Gilbert was treated the same as her true comparators.

The Eleventh Circuit has stated the following about comparator evidence:

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Mannica v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (citations and quotations omitted).

8

Gilbert points to three supposed comparators: (1) Chirell Jones; (2) Samuel Torres; and (3) Lydia Wilson.  It is undisputed that Samuel Torres was discharged over his alleged actions in "nudging" Gilbert on one occasion and tapping her on her hard hat on another occasion.  Torres is Hispanic and there is no evidence that he had previously made complaints of discrimination.  Again, Gilbert was treated no differently than this alleged comparator.

Any attempt by Gilbert to compare herself to Jones also must fail.  It is undisputed that Gilbert did not report the supposed threat made by Jones to anyone at the time it happened.  Plaintiff admits that it was Jones who complained to Supervisor Joey Broom ("Broom") about Gilbert, and that Gilbert never told Broom of the alleged threat; Gilbert only told Broom "to move me away from her." (Gilbert Depo. at 62, 133-34).  Gilbert's failure to report the incident bars any suggestion that Jones is similarly situated.  *See Bogle v. Orange County Bd. of County Com'rs*, 162 F.3d 653, 658-59 (11th Cir. 1998)(noting that employees who committed violations but were not caught are not similarly situated).

Gilbert's assertion in her brief that she "complained about Chirell Jones (her roommate and lover) choking her at the workplace, an event witnessed by Joey Broom (superintendent)" (Pl.'s Br. at 6) does not create a material issue of fact.  A review of Gilbert's testimony supports neither proposition: (1) she admits she did not tell Broom that Jones had allegedly choked her (Gilbert Depo. at 61-62, 133-34); and (2) Gilbert admits she has no personal knowledge as to whether Broom witnessed the alleged choking. (*Id.* at 61).  Broom denied witnessing any choking incident. (Broom Depo. at 37-38, Ex. 1). Given Gilbert's failure to report Jones' alleged misconduct, Jones is not similarly situated.[6]  *See Bogle*

---

[6]During the telephone interview regarding her own death threat, Gilbert said that Jones had previously threatened her at work, but it is undisputed that when asked for specifics, Gilbert could not provide any specific details of a single incident when Jones allegedly threatened her.  (Gilbert Depo. at 142-43).  Despite the fact that Gilbert gave no specific allegations against Jones, Tyson nonetheless investigated the claim by interviewing Broom and he stated that he had not witnesses

*v. Orange County Bd. of County Com'rs.* 162 F.3d 653, 658-59 (11th Cir. 1998) (employees who committed violations but were not caught are not similarly situated).

Gilbert did not report having any confrontations with Jones until she was interviewed over her own death threat, and thus there is no evidence that management knew of any alleged misconduct by Jones. During the telephone interview regarding her own death threat, Gilbert said that Jones had previously threatened her at work, but it is undisputed that when asked for specifics, Gilbert could not provide any specific details of a single incident when Jones allegedly threatened her. (Gilbert Depo. at 142-43). Despite the fact that Gilbert gave no specific allegations against Jones, Tyson nonetheless investigated the claim by interviewing Broom and he stated that he had not witnessed any altercation between Jones and Gilbert that involved violent behavior. (Johnson Depo. at 53; Broom Depo. at 37-38, Ex. 1). Thus, Jones was not similarly situated to Gilbert because no one (including Gilbert) ever came forward with any specific allegations of a death threat being made by Jones.

Even if there was some record evidence that Broom witnessed an alleged physical altercation and "did not follow the proper procedure in reporting workplace violence" (Pl.'s Br. at 11), there is still no substantial evidence to suggest that the decision to discharge Gilbert was infected with discriminatory or retaliatory animus. *Mitchell v. USBI Company*, 186 F.3d 1352, 1355 (11th Cir. 186 F.3d 1352, 1355 (11th Cir. 1999) ("Standing alone, deviation from a company policy does not demonstrate discriminatory animus."). The decision to discharge Gilbert was made by Casey, and Gilbert has not alleged or proved that Casey violated any applicable policies. *See Jones v. Bessemer Carraway Med.*

---

any altercation between Jones and Gilbert that involved violent behavior. (Johnson Depo. at 53; Broom Depo. at 37-38, Ex. 1). Thus, Jones was not similarly situated to Gilbert because neither Gilbert nor anyone else ever came forward with any specific allegations of a death threat being made by Jones.

*Ctr.*, 137 F.3d 1306, 1312 n.7 (11th Cir.) (noting that "actions taken by supervisors not involved in the decision at issue may be of such a difference to prevent them from being considered 'similarly situated' with plaintiff."), *modified*, 151 F.3d 1321 (11th Cir. 1998).  Plaintiffs' supposed evidence that Broom, Harris, or Johnson did not follow policies has no relevance to what motivated Casey's decision.

Finally, Gilbert points to a threat allegedly made by co-worker Lydia Wilson ("Wilson").  This evidence is far too attenuated to be considered by the court.  There is no admissible evidence that Wilson ever made the threat or when this incident allegedly occurred.  Gilbert has failed to even identify the unknown worker who was the alleged victim of the threat.  *See Bogle*, 162 F.3d at 659 (rejecting plaintiff's "anecdotal testimony" about alleged comparators where "witnesses who testified regarding these other incidents had no personal knowledge").  The evidence revealed during discovery shows that Gilbert and Wilson are not similarly situated.  Tyson received one complaint against Wilson in March 2001 from an employee named Glenda Guzman ("Guzman").  (Casey Decl. at Ex. 16 ¶ 16).  Wilson and Guzman had an argument in the restroom and both called the other "bitch."  Tyson investigated the incident, and issued both ladies Serious Counseling Statements and three-shift suspensions.  (*Id.*).  None of the witnesses interviewed, including Guzman, accused Wilson of using or threatening violence.  (*Id.*).  Thus, Gilbert is not similarly situated to Wilson because Tyson's investigation into Gilbert's misconduct revealed evidence (including Gilbert's own admission) that she threatened to kill her co-worker, while Tyson's investigation into Wilson's misconduct revealed no evidence of any threats or violent behavior.  *See Bogle*, 162 F.3d at 659; *Dent v. Federal Mogul Corp.*, 129 F. Supp. 2d 1311, 1314 (N.D. Ala. 2001) ("it is not enough to show that other employees engaged in the same or similar misconduct but were never disciplined simply because they were not caught.").

11

Gilbert's evidence related to this alleged incident is based solely upon her understanding of a co-worker's translation of the discussion between the two employees.[7]   Gilbert can only testify to what a co-worker told her that the co-worker understood to have been said.   This "translated hearsay" is inadmissible, and must be rejected.   *See Pritchard v. Southern Company Services*, 92 F.3d 1130, 1135 (11th Cir. 1996) (rejecting plaintiff's efforts to challenge the legitimate nondiscriminatory reason for her discharge by relying on plaintiff's testimony, which constituted inadmissible hearsay, that was "based on the statements of unknown co-workers"), *cert. denied*, 520 U.S. 1274 (1997).

Even if the court were convinced that Plaintiff is able to establish a *prima facie* case, another compelling reason to grant summary judgment in favor of Tyson on the retaliatory discharge claim is Plaintiff's inability to challenge Tyson's legitimate non-discriminatory reason for her discharge – Plaintiff's admission that she threatened to kill a co-worker.  (Gilbert Depo. at 123-24, 105-06, Ex. 10). Without any question, threatening to kill someone is a sufficient basis for discharging an employee, and Gilbert's admission means that Tyson has rebutted any *prima facie* case of discrimination.   *See Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *see, e.g., Lenoir v. Roll Coater, Inc.* 13 F.3d 1130, 1132-33 (7th Cir. 1994) (holding that employee's threat to kill two co-workers provided sufficient basis for firing); *Smith v. New York Times*, 955 F. Supp. 558, 560 (D.S.C. 1996) (holding that plaintiff's threat to kill supervisor is legitimate nondiscriminatory for discharge), *aff'd*, 107 F.3d 867 (4th Cir. 1997); *Payton v. Runyon*, 990 F. Supp. 622, 629 (S.D. Ind. 1997) (holding that employer proffered legitimate nondiscriminatory reason for discharge when it referenced employee's death threats against supervisor).

---

[7]Gilbert's testimony is not admissible because she seeks to testify about what another co-worker translated to her that Wilson supposedly said in Spanish.  Gilbert's "translated hearsay" is inadmissible.  *See Pritchard v. Southern Company Services*, 92 F.3d 1130, 1135 (11th Cir. 1996) (rejecting plaintiff's testimony, which constituted inadmissible hearsay, that was "based on the statements of unknown co-workers"), *cert. denied*, 520 U.S. 1274 (1997).

Furthermore, the mere fact that here the threat was made over the telephone to a supervisor rather than uttered on the employer's work site does not alter the court's analysis for at least two reasons. First, because an employer's workplace violence policy includes an "at work" limitation does not mean that an employer, in exercising business judgment, cannot dismiss an employee for threatening to kill another employee even if such a threat is technically outside the scope of the policy. Second, and in any event, the threat in this case was made when Gilbert was speaking to a Tyson supervisor over the telephone.

Therefore, there is undisputed evidence that Gilbert threatened a co-worker.[8] Gilbert has not presented substantial evidence of a comparator (*i.e.*, someone similarly situated) who was not discharged for such an offense. Accordingly, for all the above reasons, summary judgment is due to be entered in favor of Tyson on Plaintiff Gilbert's retaliatory discharge claim.

### 2.    Other Incidents of Disparate Treatment/Retaliation

Gilbert also maintains that Tyson impermissibly subjected her to disparate treatment based upon her race (white) and national origin (American citizen). Plaintiff Gilbert also appears to assert that some, if not all of the incidents about which she complains support a claim for retaliation. Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 20003-2(a). Similarly, the anti-retaliation provisions of Title VII protect an employee from being subjected to an adverse employment action. *See Widerman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). However, at the same time, the protections of Title VII do

---

[8]The court recalls that during oral argument, Plaintiff attempted to discount the threat that she made because it arose out of a personal relationship with Jones rather than strictly out of a co-worker one. Regardless of the true nature of their relationship, if anything, the court can certainly understand why an employer's concern over a death threat might actually be enhanced, rather than minimized, due to a pre-existing domestic arrangement shared by two of its employees.

not extend to "everything that makes an employee unhappy." *Davis v. Town of Lake Park*, 245 F.3d

1232, 1242 (11th Cir. 2001).  As instructed by the Eleventh Circuit, an adverse employment action:

> [M]ust impact the "terms, conditions, or privileges" of the plaintiff's job in a real and demonstrable way.  Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.  We therefore hold that to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Davis*, 245 F.3d at 1239-40.

Against this backdrop, Plaintiff Gilbert cannot show that she suffered an actionable adverse

employment action.  More specifically, Gilbert's assertion that in 1998 Tyson removed her from a line

tech position and placed her in a position directly on the processing line[9] (Gilbert Depo. at 185-87) fails

to present any evidence that the transfer affected her employment in any tangible, adverse way as a result

of this change.  *See Davis*, 245 F.3d at 1244-45 (explaining that "an employee alleging a loss of prestige

on account of a change in work assignments, without any tangible harm, will be outside the protection

afforded by Congress in Title VII's anti-discrimination clause").  Furthermore, Gilbert admits that Tyson

put her in the different position as an accommodation relating to work restrictions placed on Gilbert by

her doctor.  (Gilbert Depo. at 187).  Moving an employee to another position because of a doctor's

orders is an accommodation which, in the context of this record, constitutes a legitimate, non-

discriminatory and non-retaliatory reason for an employment action.

---

[9]It is undisputed that Gilbert did not file her EEOC charge about this claim until May 23, 2002. (Gilbert Depo. at Ex. 26).  As a result, any claim relating to the transfer is time-barred.  Also, in any event, Plaintiff released any claims that she had against Tyson that occurred prior to July 16, 1999.  (Gilbert Depo. at 31-32).

Gilbert also complains about a non-punitive letter of reprimand that she received for relaying a derogatory message to a fellow team member. (Gilbert Depo. at 171, 217-18). However, a counseling statement that has no adverse effect on a plaintiff cannot form the basis of a discrimination or retaliation claim. *See Davis*, 245 F.3d at 1240-41 (refusing to allow claim of discrimination based upon alleged discriminatory "counseling memoranda" that expresses concern over one fact of employee's job performance). Moreover, Tyson voided the write up after Gilbert complained about it. (Gilbert Depo. at 171-73). "[T]he decision to reprimand . . . an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001).

Gilbert also raises some vague issues about overtime and taxes. However, with respect to overtime, she admits that because of her status as a covered employee under workers' compensation, she was unable to work over 40 hours under Tyson's policy. (Gilbert Depo. at 220). As for any tax withholding disparities among Hispanic, black, and white employees, Plaintiff has offered no evidence that Tyson is the party responsible for any differences, assuming that they even exist. (Gilbert Depo. at 214). Accordingly, for all the above reasons, summary judgment is due to be entered in favor of Tyson on Plaintiff Gilbert's remaining discrimination/retaliation claims.

**B.      Plaintiffs Amos and Saunders's Case**

      **1.      Hostile Work Environment**

            **a.      No *Prima Facie* Case**

Plaintiffs Amos and Saunders assert that they were harassed because of their sex by a co-employee relating to a single isolated bathroom incident. Title VII provides that an employer shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1994). Title VII has been interpreted to specifically allow claims for harassment to rest upon the theory of a hostile work environment. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

A plaintiff attempting to show that he has been subjected to a hostile work environment must prove certain elements to establish the claim. These elements include proof that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there exists a basis for holding the employer liable.[10]  *See Henson v. City of Dundee*, 682 F.2d 897, 903-04 (11th Cir. 1982); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). While a reasonable review of the record supports a conclusion that the bathroom incident could have merely been an innocent mistake unrelated to Plaintiffs' sex,[11] the court will assume that Plaintiffs are able to satisfy the third element. The key question here, however, is whether Plaintiffs can put forth sufficient evidence to establish the fourth element enumerated above. The requirements to establish that element are well developed.

---

[10]When a plaintiff fails to make the *prima facie* showing of an abusive work environment, the court need not reach the issue of employer liability. And even when the plaintiff successfully makes a *prima facie* showing of harassment involving no tangible employment action, the defendant/employer is not automatically liable.

[11]On the night of the incident in question, Maysonet was not working his regular job. (Amos Depo. at 177). Furthermore, at least one of the doors to the restroom did not contain labeling to indicate that it was a bathroom. (Johnson Depo. at 111).

In order for a plaintiff to establish a *prima facie* case of hostile work environment harassment actionable under Title VII, the incidents of harassment must be "so 'severe or pervasive' as to 'alter the conditions of employment and create an abusive working environment.'" *Faragher*, 524 U.S. at 786 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *see also Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995). Title VII is not "a general civility code" nor does it protect against "the ordinary tribulations of the workplace, such as the sporadic use of 'abusive language, gender-related jokes, and occasional teasing.'" *Faragher*, 524 U.S. at 788. Infrequent or "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" sufficient to constitute a violation of Title VII.[12] *Id*. The severity of the behavior must be evaluated both objectively and subjectively in light of all the circumstances,[13] *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998), and, particularly in the event of an isolated incident, only the most extreme harassing conduct will be found to violate Title VII. *See Faragher*, 524 U.S. at 788; *Oncale*, 523 U.S. at 81-82; *Meritor*, 477 U.S. at 67 ("[N]ot all workplace conduct that may be described as 'harassment' [is actionable].").

Moreover, the Supreme Court has said that the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor*, 477 U.S. at 67). Accordingly, unpleasant comments or other unseemly conduct in the work place does not

---

[12]However, the determination as to whether the harassment was sufficiently severe or pervasive should not be based solely on the number of incidents alleged. *See Vance v. Southern Bell*, 863 F.2d 1503, 1510 (11th Cir. 1989).

[13]"The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Mendoza*, 195 F.3d at 1246.

automatically rise to the level of an abusive environment in violation of Title VII.

As the Eleventh Circuit has stated:

> The Supreme Court and this court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23, 114 S. Ct. 367). The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the Plaintiff's employment and create a hostile or abusive working environment. *Id.; see Harris*, 510 U.S. at 23, 114 S. Ct. 367; *Henson*, 682 F.2d at 904; *Faragher*, 118 S. Ct. at 2283 (citing *Harris*, 510 U.S. at 23, 114 S. Ct. 367, and explaining that "[w]e directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances'").

*See Mendoza*, 195 F.3d at 1246. Against this legal backdrop, Amos and Saunders are unable to adduce sufficient evidence regarding their hostile work environment claim to withstand summary judgment.

"First and most importantly," Plaintiffs have not presented evidence that the conduct about which they complain was "physically threatening or humiliating." *Id*. at 1248. At most, Amos and Saunders have put forth evidence of mere offensive conduct, not physically menacing or demeaning behavior. *Id*. at 1246. *Cf. Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (examining physical nature of harasser's conduct including repeated attempts to touch employee's breasts, put his hands down her pants, pull off her pants, and entice others to hold her down so that he could grope her).

Second, Plaintiffs have not presented substantial evidence that the offensive conduct unreasonably interfered with their job performance. To the contrary, they have admitted that the incident, while upsetting, did not affect them to the pont of missing any work.

18

Third, Plaintiffs have not established that the conduct was sufficiently severe as to be actionable. Quite simply, a male co-employee's walking into the women's bathroom with Amos and Saunders and staring at them is, absent more, insufficient to constitute severe and pervasive conduct. *See Williams v. Russell Corp.*, 218 F. Supp. 2d 1283 (M.D. Ala. 2002) (dismissing hostile work environment claim based upon male co-worker entering women's restroom with plaintiff inside stall because incident is "in no way sufficiently severe or pervasive to warrant a finding of a hostile environment."). Binding precedent of the Eleventh Circuit and other persuasive authority support this conclusion. The Eleventh Circuit has rejected much more severe conduct than that alleged here as insufficient to state a sexual harassment claim. In *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247-48 (11th Cir. 1999), the plaintiff's supervisor constantly watched and followed her throughout the workplace, constantly looked her up and down, twice when looking her up and down stopped on her groin area and made a sniffing motion, once rubbed his hip against hers and touched her shoulder while smiling, and once responded to her by saying "Yeah, I'm getting fired up, too." In measuring this conduct against other harassment cases, the Eleventh Circuit, sitting *en banc*, held that "conduct that is much more severe and pervasive than the conduct shown by Mendoza has been found insufficient as a matter of law to sustain hostile-environment claims." *Mendoza*, 195 F.3d at 1251-52 (discussing cases in which the conduct was substantially more severe, but nevertheless legally insufficient); *see also Colon v. Environmental Technologies, Inc.*, 184 F. Supp. 2d 1210, 1218, 1221 (M.D. Fla. 2001) (calling plaintiff a Spanish word that means bitch, whore or prostitute; crotch grabbing; spitting; calling Plaintiff stupid; and hand gesture signifying the "f word" not severe and pervasive); *Breda v. Wolf Camera, Inc.*, 148 F. Supp. 2d 1371, (S.D. Ga. 2001) (coworkers' conduct, which included calling plaintiff and other females "bitches", making sexual comments, ogling other women in employee's presence, sandwiching her between their

bodies in extremely close proximity several times when she was near cash register, and other conduct, was not sufficiently severe to establish *prima facie* case of hostile work environment); *Scott v. Pizza Hut of America, Inc.* 92 F. Supp. 2d 1320, 132 (M.D. Fla. 2000). ("The complained-of acts in this case, in light of *Mendoza* and this Court's earlier holdings, are insufficiently severe or pervasive to support a Title VII or FCRA claim for hostile work environment sexual harassment. First, the complained-of acts are insufficiently severe to amount to a Title VII violation. Scott complains of rude language, comments to her that '[i]f she'd go out and get some sex, she wouldn't be so bitchy,' seeing the tracing of an obscene gesture in an air-conditioner's condensation, another employee being picked up and touched, foul lyrics being played in a song and threatening stares from other employees. All of these incidents, while boorish, stupid, and inconsiderate, do not rise to the level of the complained-of treatment in *Mendoza* [and other cases].").

As evidenced by cases such as *Mendoza*, the Eleventh Circuit continues to require sexual harassment cases to meet a critical threshold of severity before allowing them to proceed. In *Gupta v. Florida Board of Regents*, 212 F.3d 571, 578-79 (11th Cir. 2000), over a period of six months, the alleged harasser looked the plaintiff up and down, frequently called her at home at night, asked about her boyfriend, asked her if she was in bed, repeatedly asked her to lunch, stared at her legs, touched the inside of her thigh, lifted the hem of her dress, unzipped his pants in front of her to tuck in his shirt, offered to spend the night with her, told her "I can tell you are innocent and you don't have much experience," and told her that women are like meat and "men need variety in women." Weighing the sufficiency of these facts, the Eleventh Circuit held as follows:

> The alleged harassment in this case exemplifies the ordinary tribulations of the workplace which the Supreme Court and this Court have held do not constitute actionable sexual harassment. [The plaintiff] failed to

> present evidence that [the harasser's] conduct was in any way "physically threatening or humiliating," or that a reasonable person would view the conduct as "severe." The Fifth Circuit recently opined, "all of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed and uninhibited sexual threats or conduct that permeated the plaintiff's work environment." This is not such a case.

*Gupta*, 212 F.3d at 586 (citations omitted). To hold that the conduct in this case creates an objectively hostile environment would "establish a baseline of actionable conduct that is far below that established in [the Eleventh Circuit as well as] other circuits." *See Mendoza*, 195 F.3d at 1251.

### b.    Tyson's Immediate and Appropriate Corrective Action

Plaintiffs' hostile work environment claim fails for another reason–Tyson immediately and appropriately took corrective action. When such alleged harassment is committed by a co-worker, a plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) about the harassment and failed to take immediate and appropriate corrective action. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003). Amos and Saunders concede that when they complained to Teresa Johnson and Roni Noreiga about the bathroom incident involving Maysonet, both supervisors told them that they would address the situation. (Amos Depo. at 248-49, Ex. 26; Saunders Depo. at 137). Moreover, it is undisputed that, on that very same night, Noreiga and Johnson verbally counseled Maysonet on the scope of his job and expressly instructed him not to enter the women's restroom as a part of his job duties. (Johnson Depo. at 29, 34-35, 95; Noreiga Depo. at 55-59). Tyson also issued a serious counseling statement to Maysonet after Human Resources had concluded its investigation into the incident. (AF No. 255).

While there is no "uniform test" for determining what "constitutes reasonable care in preventing sexual harassment," *see Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir.)

(recognizing that wide array of employment settings makes establishment of uniform rule for measuring employer's reasonable care in preventing sexual harassment difficult), *cert. denied*, 531 U.S. 926 (2000), the fact that there were no other complaints of subsequent inappropriate conduct on the part of Maysonet supports a finding that Tyson's corrective action was sufficient.  *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989) (noting that it is of "special importance" when harassment ends after remedial action by employer).  Although Plaintiffs contend that Tyson should have done more, their subjective view is immaterial as a plaintiff does not have "a right to the remedy of her choice." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1555 (11th Cir. 1997).  In summary, therefore, the court concludes that any misconduct by Maysonet was not actionable, and, in any event, Tyson took prompt corrective action to deal with the misconduct.

### 2.      Other Incidents of Disparate Treatment/Retaliation

Similar to the analysis relating to Gilbert, Plaintiffs Amos and Saunders' remaining claims under Title VII, the ADEA and/or the AADEA cannot survive summary judgment.  Plaintiffs cannot demonstrate that they suffered an adverse employment action, nor can they challenge Tyson's proffered reasons for its action. With respect to retaliation, Plaintiffs cannot demonstrate that they engaged in protective activity covered by Title VII, much less show a causal connection between it and any adverse employment action.

### a.      No Actionable Adverse Employment Action

While Saunders does not point to any specific disciplinary action as being discriminatory, Amos complains about two particular items–a non-punitive letter of reprimand and her suspension.  Just like Gilbert, after Amos complained about the write up, it was rescinded.  Also, while Amos was off work without pay for the one-day suspension, Tyson fully reimbursed her for the pay that she did not receive.

22

Therefore, consistent with the *Davis* opinion, Amos suffered no tangible harm as a result of the rescinded reprimand and the reimbursed suspension.

### b.   No Protected Activity

An employee engages in protected activity (and thus is a beneficiary of Title VII's anti-retaliation provisions) when, considering the totality of the circumstances, she has a good faith and reasonable belief that the underlying employment practice about which she complains is unlawful. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998), *cert. denied*, 525 U.S. 1000; *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). This test has both a subjective and an objective component. *Harper*, 139 F.3d at 1388. Moreover, "the objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). Furthermore, while the act complained about does not need to actually constitute sexual discrimination, "it must be close enough to support an objectively reasonable belief that it is." *Clover*, 176 F.3d at 1351.

The court agrees with the analysis set forth in *Williams v. Russell Corp.*, 218 F. Supp. 2d 1283, 1296 (M.D. Ala. 2002). There, in a case with substantially similar facts, the court held that "no reasonable person could conclude . . . a male employee briefly walking into the women's restroom on one occasion, with no evidence of inappropriate physical contact or exposure–created a sexually hostile environment as that term is defined by the weight of case precedent." *Id.* Similarly, here, Plaintiffs did not engage in protected activity when they reported Maysonet's one-time presence in the women's bathroom.

### c.      No Causal Connection

Plaintiffs lack evidence of any causal connection relating to retaliation is likewise fatal to their claims for reprisal.   Tyson notified Amos about its decision to suspend her prior to having any knowledge of the bathroom incident.   "A decision maker cannot have been motivated to retaliate by something unknown to him." *See, e.g., Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000), *cert. denied*, 523 U.S. 1037 (2001).   Also, no evidence exists that the employee who reported Amos knew that she had made any prior complaints.   Saunders does not point to anything that happened to her after her report of the "bathroom incident."

### d.      Tyson's Proffered Reasons for its Actions

While the court is persuaded that Plaintiffs are unable to assert *prima facie* cases of discrimination or retaliation, Plaintiffs' inability to dispute proffered reasons for its actions is another reason that summary judgment is proper.   With respect to the non-punitive letter that Tyson issued to Amos, the company was responding to another employee's complaint of misconduct, which constitutes a legitimate reason for employer action.   *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).   As for Plaintiffs' complaint about the reduction of hours in the Sanitation Department, it is undisputed that Tyson reduced the number of overtime hours for all employees (Hispanic, white, black, female, male, and those who never allegedly reportedly engaged in Title VII protected conduct). (Noriega Depo. at 112-14).   Moreover, Plaintiffs have failed to produce any evidence that Tyson's motivation for reducing overtime in the Sanitation Department was to discriminate or retaliate against them.   In sum, after reviewing the Rule 56 file, the court has found no substantial evidence that Plaintiffs were treated in a discriminatory manner (*i.e.*, because of race, national origin, sex, or age) or retaliated against.

e.    **Plaintiff Saunders's Age Claims Are Procedurally Flawed**

In addition to substantive deficiencies, Plaintiff Saunders's age claims are procedurally flawed. During the pendency of this motion, the Supreme Court of Alabama issued a decision that established the applicable statute of limitations periods under the AADEA.  *See* Ala. Code § 25-1-20, *et seq.*; *Byrd v. Dillard's, Inc.*, 368 F.3d 1278, 1279 (11th Cir. 2004).   In answering a certified question from the Eleventh Circuit, the Alabama Supreme Court held:

> (1) If a plaintiff files an AADEA claim in a state court [or federal court] within 180 days from the occurrence of the alleged unlawful practice, the applicable limitations period for filing a charge with the EEOC, then that plaintiff's claim is timely.

> (2) If a plaintiff files a charge with the EEOC within 180 days from the occurrence of the alleged unlawful practice and thereafter receives notice that the EEOC has dismissed the charge, then that plaintiff's AADEA claim filed in the state court [or federal court] within 90 days after the EEOC's notice of dismissal of the charge is timely.

*Id.* at 1279.  Plaintiffs filed their lawsuit on March 7, 2002.  Therefore, for an AADEA claim to be timely under paragraph (1) above, Plaintiffs would have had to file such a claim within 180 days of the acts about which they complain.  They did not do so.  The incidents upon which they rely all took place long before September 2001.

For an AADEA claim to be timely under paragraph (2) above, Plaintiffs would have had to file their case within 90 days after receiving notice of their right to sue from the EEOC.  While under this scenario, Amos's AADEA claim procedurally survives because she included age discrimination in her charge filed with the EEOC, Saunders's AADEA claim does not because she did not indicate that she was discriminated against on the basis of age when filing her charge.  Because of this omission, Saunders's federal ADEA claim is also barred as it is beyond the scope of her EEOC charge (and any reasonable investigation expected to grow out of it).

25

## V.    <u>Conclusion</u>

For the reasons stated above, Tyson's Motion for Summary Judgment is due to be granted. (Doc. #31). The court finds that no genuine issues of material fact remain for trial as to Plaintiffs' claims and that Tyson is entitled to judgment as a matter of law.  The court will enter an order contemporaneously herewith granting Tyson's Motion for Summary Judgment.

**DONE** and **ORDERED** this _____5th_____ day of January, 2005.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

26